**A. E. "Bud" Bailey**, OSB No. 871577
BBailey@wagelawyer.com
**J. Dana Pinney**, OSB No. 753088
JDPinney@wagelawyer.com
**Chey K. Powelson,** OSB No. 035512
CPowelson@wagelawyer.com
Bailey, Pinney & Associates, LLC
12204 SE Mill Plain Blvd, Ste 100
Vancouver, WA  98684
Phone: (360) 567 - 2551
Fax:    (360) 567 - 3331
        Of Attorneys For Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### (MEDFORD DIVISION)

| | |
|---|---|
| **ERNEST ARTHUR**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MURPHY COMPANY**, an Oregon corporation, d/b/a as MURPHY VENEER, MURPHY PLYWOOD, and MURPHY HARDWOOD PLYWOOD,<br><br>Defendant. | **1:10-CV-03142-CL**<br><br>PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE  FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE |

## I.  SUMMARY

The parties agreed to settle this case during the Court-ordered settlement conference with Honorable Thomas Coffin. At the end of the conference, counsel for both parties entered into an agreement entitled, "Agreed Mediated Class Payout" ("Term Sheet"). It memorialized their agreement to settle, and included all essential terms. At that time, Defendant's counsel acted with actual or apparent authority as an agent for Murphy Company. Defendant's counsel Triplett admitted he obtained authorization from his client to settle the case, and on behalf of his client agreed with Plaintiff to do so. Plaintiff had

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

no knowledge to the contrary that Mr. Triplett did not have authorization to sign the Term Sheet. To the contrary, Defendant's and its counsel's acts at the settlement conference gave the reasonable belief that Mr. Triplett had authority to bind Murphy Company. Plaintiff relied upon that belief.

Further, at the end of the settlement conference, Defendant's counsel did not make a record with the settlement judge that anything in or related to Term Sheet was subject to further contingencies. Defendant counsel had authority to sign the Term Sheet on behalf of Defendant Murphy Company. Murphy is bound. "If an agent is authorized to perform a certain act on behalf of his principal, the principal cannot escape liability that arises from that act because the principal does not like the consequences." *Hiransomboon v. Unigard Mut. Ins. Co.*, 46 Or. App. 493, 499 (1980). Any relief which Murphy now seeks must unfortunately be from its former counsel.

## II.  RELEVANT FACTS

### A.  Defendant's Request for an Early Court-Sponsored Settlement Conference

Defendant's counsel caused the settlement conference to occur early in this litigation. In March 2011, Defendant had offered to settle Plaintiff's individual claim, but stated that if it was rejected, then Murphy Company is "prepared to mediate both his claim and the class claims. In that regard, we would be happy to have a federal judge act as mediator-Hogan, Ann Aitkin [sic], Leavy,or? [sic]" *Powelson Decl.*, ¶ 2, Ex. 1. Later, during the parties' March 28 FRCP 16 conference with the Court, Defendant's counsel raised the issue of Defendant's interest in early mediation, so as to avoid litigation costs. *Id.*, ¶ 3.

Thereafter, the Court ordered that limited, pre-class certification discovery occur, and that court-sponsored settlement conference be scheduled with Judge Coffin for June

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

13, 2011. ECF No. 14.

Judge Coffin also issued an order relating to the settlement conference. ECF No. 15. That order stated that "**Presence of all parties with settlement authority required.**" Id. (bold original). In that regard, Judge Coffin's order further required that "If any of the parties is going to seek input from a third person(s) regarding decisions associated with the settlement of a case, that third person should be present during all phases of the settlement process." ECF No. 15. The order cautioned that "**Any party who, without prior court approval, fails to have all persons with settlement authority present, may be subject to sanctions. Such sanctions may include costs and attorney fees of the other parties attending the settlement conference.**" Id. (bold original).

Attached to Judge Coffin's order was a document entitled "Preparation for Settlement Conference," which listed several types of information required in the parties' confidential briefs, including the "Settlement proposal that you believe would be fair," the "Settlement proposal that you would be willing to make in order to conclude the matter and stop the expense of litigation." ECF No. 15 (p. 2).

During the limited pre-class certification discovery phase, Plaintiff's counsel reminded Defendant's counsel that the alleged class claims for unpaid wages extended back to six years prior to the filing of the Complaint. *Powelson Decl.*, ¶ 4.

## B. The June 13 Settlement Conference

The required persons for both side appeared at the settlement conference. Plaintiff Ernest Arthur and his attorney Bud Bailey were present for Plaintiff, and present for Defendant were John Murphy, President of Murphy Co., Resources/Safety Manager Scott Prowell, and Defendant's counsel Thomas Triplett. See, ECF No. 28 (Def. *Triplett Decl.*, ¶ 2); and ECF No. 17 (Coffin Minute Order).

Page 3 -    PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

Even though the conference had been scheduled for approximately two months, Mr. Murphy left the settlement conference at some point to attend "another meeting," ECF No. 28 (Defendant's *Triplett Decl.*, ¶ 3), because he had assumed the mediation "would not take the entire date of June 13." ECF No. 26 (Def. *Murphy Decl.*, ¶ 2). Nonetheless, the parties' negotiations continued, and Defendant's counsel Triplett and Mr. Murphy both admit that the latter remained available by phone. ECF No. 28 (Def. *Triplett Decl.*, ¶ 3); and ECF No. 26 (Def. *Murphy Decl.*, ¶ 3). Defendant's counsel also admits that "With Judge Coffin's assistance, the parties ultimately reached an agreement in principle that a total settlement funds be set at $450,000." ECF No. 28 (Def. *Triplett Decl.*, ¶ 3). Finally, Defendant's attorney admits he communicated that $450,000 dollar amount to the absent Mr. Murphy, and "secured his approval." Id. Mr. Murphy confirms he expressly approved that amount.  ECF No. 26 (Def. *Murphy Decl.*, ¶ 3).

## C.  The Parties' June 13 Signed Term Sheet

After securing Mr. Murphy's approval to settle the case for $450,000, Murphy Company's counsel signed a Term Sheet on behalf of the Company. ECF No. 28 *(*Def. *Triplett Decl.*, ¶ 3). See also, ECF No. 23 (Pltf. *Bailey Decl.*, Ex. 3 Term Sheet). At no time did Defendant's counsel Triplett nor Defendant indicate to Plaintiff or the Court that counsel did not have authority to sign the Term Sheet for Murphy Company.

The signed Term Sheet memorialized the parties' material terms of the class action settlement, including allocation amounts of the $450,000. ECF No. 23 (Pltf. *Bailey Decl.*, Ex. 3 Term Sheet). Defendant's counsel claims he failed to inform Mr. Murphy of that allocation. ECF No. 28 *(*Def. *Triplett Decl.*, ¶ 3). Defendant's counsel did not inform Judge Coffin or Plaintiff's counsel, or otherwise seek to state on the record, that the parties' settlement reflected in the Term Sheet was subject to any additional

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

contingencies.

Rather, the only contingency which Defendant's counsel made in his client's final counteroffer was that if 10% of the class members opted out, then "Defendant can set aside the agreement." ECF No. 23 (Pltf. *Bailey Decl.*, Ex. C).  Plaintiff agreed to that demand and included the contingency in the Term Sheet. Id. The settlement conference then concluded with both parties advising Judge Coffin that the case was settled, pursuant to the terms he had last negotiated between the parties.

### D. Post-Settlement Conference Events and Party Conduct

On June 16, 2011, Judge Coffin issued a Minute Order stating that the case settled. ECF No. 17. Defendant made no objection to that characterization.  The Order also stated that "The parties shall submit proposed class settlement to Magistrate Judge Mark D. Clarke for approval." ECF No. 17. Defendant did not seek relief from that requirement.

Around that same time Plaintiff's counsel had drafted the formal settlement documents, including a proposed FRCP 23 notice to class members, and sent it to Defendant's counsel. ECF No. 23 (Pltf. *Bailey Decl.*, Ex. F, pp. 2-3, and Ex. G). The proposed notice contained the terms from the parties' signed Term Sheet. Id. (Ex. G, pp. 22-25).

In response, on June 16, 2011, Defendant's counsel proposed three minor changes to the proposed settlement document. ECF No. 23 (Pltf. *Bailey Decl.*, Ex. E, p. 1). Plaintiff's counsel indicated to Defendant's counsel the next day that the minor changes would probably not pose any problems. See, id. Then on July 8, Defendant's counsel Triplett informed Plaintiff's counsel, perhaps with an eye to disavow the agreement to settle: "I have not been able to convince Murphy to accept the draft contract that you submitted. Indeed, they have shot the messenger. I am being replaced by Mike Haglund *

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

* *." *Powelson Decl.*, Ex. 2.

Defendant's President, John Murphy, now appears to blame former counsel Triplett for not communicating the allocations of the $450,000 amount – the amount which Mr. Murphy admits he had granted Mr. Triplett authority to accept on June 13. See, ECF No. 25 (Def. *Murphy Decl.*, ¶ 3, ¶ 5).[1] During the parties' July 15, 2011, conference with the Court, Defendant's new counsel also claimed there were "all sorts of terms that relate to the [FRCP 23 class] notice procedure" that were not agreed to at the settlement conference. 07-15-2011 Hrg. Trns., p. 3:25 - 4:1. Later in the same hearing, Defendant's counsel argued that "Mr. Murphy never understood how the settlement might be implemented [under FRCP 23.]" Id., p. 9:2-4.

### III.  POINTS & AUTHORITIES

#### A.  Relevant ADR Principles and Court Rules

The Ninth Circuit recognizes "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re: Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (2008). Federal Rule of Civil Procedure 16 provides in part that a court may conduct "one or more pre-trial conferences for such purposes as * * * facilitating settlement." F.R.C.P. 16(a)(5). In that regard, the court "may consider and take appropriate action on * * * settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule * * *." F.R.C.P. 16(c)(2)(I). Federal Rule of Civil Procedure 1 states that the Civil Rules

---

[1] Such testimony by both Murphy's President and its former counsel most likely waived the attorney-client privileged communications on these issues. See e.g., *United States v. Amlani*, 169 F.3d 1189, 1195-96 (9th Cir. 1999); and *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").

Page 6 -    **PLAINTIFF'S MEMORANDUM:  (1)  SUPPORTING  PLAINTIFF'S  MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

"should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

The District's of Oregon Local Rule 16 includes dispute resolution options such as the requesting of a settlement judge and ordering mediation. LR 16-4(e); LR 16-5(a). For alternative dispute resolution proceedings, the Local Rule states that "No party will be bound by anything done or said at the conference **unless a settlement is reached, in which event, the agreement upon a settlement will be reduced to writing under the direction of the mediator *and __will be binding__ upon all parties to that agreement.*"** LR 16-4(g)(3) (emphases added).[2]

## B. Oregon Contract Law

Under Oregon law, Mr. Triplett's opinion that there was no settlement seems irrelevant as to whether the parties have a binding agreement. Oregon courts adhere to the "objective theory" of contract formation, under which a court will look at the parties' "'communications and overt acts,' not their 'undisclosed intents and ideas'." *Kabil Developments Corp. v. Mignot*, 279 Or. 151, 158 (1977).

Here, during the settlement conference, Defendant had held out its attorney as having authority to continue negotiating after Defendant's President left. Plaintiff and Defendant later agreed to the material terms (including one that Mr. Triplett had insisted be included), which they memorialized in writing as the Term Sheet. Counsel for both parties signed that Sheet on behalf of their clients. Even if the Court finds that all material terms were not included, this Court may sit in equity and compel specific performance.

///

---

[2] Cf. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (both parties orally representing to court that a settlement had been reached, and Court finding that the agreement to settle was binding, even without a written agreement).

Page 7 -    **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

In Oregon, "Contract formation requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.' * * * * 'A manifestation of acceptance to the offeror or his agent forms the contract regardless of the intent of the acceptor.'" *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 578 (2005) (internal cites and other internal quotes omitted)."'Anything that amounts to a manifestation of a formed determination to accept the offer, communicated to the party making such offer' completes the contract." *Id.* at 579 (internal cited omitted).

Further, "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof[.]" *Ken Hood Constr.*, 201 Or. App. at 579 (internal cite omitted). "The enforceability of a contract or agreement does not depend on whether it properly may be categorized as 'preliminary,' or an 'agreement to agree,' or and 'agreement to negotiate.' Rather, it is the contents of the agreement and what the parties intended that is important." *Logan v. D. W. Sivers Co.*, 343 Or. 339, 347 (2007).

In addition to mutual assent, there must be consideration, which "is defined as an act other than a promise, or as a return promise, bargained for and given in exchange for the promise." *Schafer v. Fraser*, 206 Or. 446, 466 (1955).

Finally, an agreement must include all "essential" terms, which are those that go "to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement." *Johnstone v. Zimmer*, 191 Or. App. 26, 34 (2003). A term may be material "depending on the nature of the agreement and the circumstances as they existed at the time the parties reached the agreement. All terms that are not material are subordinate to the material terms.'" *Dalton v. Robert Jahn Corp.*, 209 Or. App. 120, 139-40 (2006) (internal cites omitted), *rev. denied*, 342 Or. 416 (2007).

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

"'Parties who agree on the essential terms of a contract may intend those terms to be binding and, at the same time, implicitly agree to bargain in good faith on the remaining terms. That fact does not prevent a court from enforcing the parties' agreement.'" *Ken Hood Constr.*, 201 Or. App. at 580 (internal cited omitted).

The Term Sheet at issue in this case is binding. It was not merely an indefinite agreement to later agree. That Sheet memorialized the parties' mutual assent, and consideration came in the form of refraining from further litigation.[3] The Term Sheet also included the essential terms, which were: (1) the dollar amounts to be paid (a) to the class (divided equally among the class members) to each class member, (b) to Plaintiff's attorneys for fees and costs, (c) for administration, and (d) the named Plaintiff; and (2) Defendant's bargained-for contingency that if 10% of the class members opt out, then the agreement would be set aside. The remaining terms which the parties subsequently discussed by e-mail were subordinate terms in the context of which Plaintiff was bargaining in good faith, and was amenable to Defendant counsel's proposed changes.[4]

///

///

_____

[3] Under Rule 23(e), the class members will be sent notice of their rights, that the case has settled, and the gross amount of their claims. Plaintiff and the class obtain the benefit of a class payout without the further need to litigate.

[4] Promissory estoppel in the alternative could apply against Defendant. "[P]romissory estoppel can apply, under appropriate circumstances, to promises that are indefinite or incomplete, including agreements to agree." *Neiss v. Ehlers*, 135 Or. App. 218, 228 (1995). "[P]romissory estoppel remedies are more flexible in nature than contract remedies and are aimed at compensating the promisee for damages that result from actions in reliance on the promise, rather than providing comprehensive contract relief for the breach of the indefinite promise itself." *Id.* The elements of promissory estoppel are: "(1) a promise (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position.'" *Id.* at 223. See also, *Schafer v. Fraser*, 206 Or. 446, 472-89 (1955).

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

## C. Federal Rule of Civil Procedure 23 and Class Action Settlements

The parties' subordinate terms were then subject to Court approval under F.R.C.P. 23(e). The Ninth Circuit has clearly explained that

> There are two steps in reaching a settlement in a class action: (1) the parties by themselves reach an agreement of settlement, and (2) the court evaluates the proposed settlement. **The reason for judicial approval is not to give the negotiating parties more time or even to ensure that the settlement is fair as between the negotiating parties**, but rather to ensure that other unrepresented parties and the public interest are treated fairly by the settlement. **Judicial approval of a consent decree is clearly a condition subsequent, and should not affect the legality of the formation of the proposed consent decree as between the negotiating parties**.

*Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982) (emphases added) (internal cites omitted). Federal Rule of Civil Procedure 23 governs class actions. Section (d) is entitled "Conducting the Action," and provides a court substantial discretion in determining the course of proceedings, issuing notice, and dealing with other procedural matters. F.R.C.P. 23(d)(1). The court may even combine an order under Section (d) with an order under Rule 16. F.R.C.P. 23(d)(2). Moreover, F.R.C.P. 23(e) is entitled "Settlement, Voluntary Dismissal, or Compromise," and reads in full:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) **The parties seeking approval must file a statement identifying any agreement** made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

> afford a new opportunity to request exclusion to individual
> class members who had an earlier opportunity to request
> exclusion but did not do so.
>
>   (5) Any class member may object to the proposal if it requires
> court approval under this subdivision (e); the objection may be
> withdrawn only with the court's approval.

FRCP 23(e) (bold added). The "any agreement" phrase in sub-section (3) contemplates

that the parties have agreed to settle the case, subject to court approval. That is, an

agreement between parties to settle are still binding, though more formal settlement

documents will require court approval.[5] See, *Collins*, 679 F.2d at 172.

   Thus, it is not novel for parties in a class action to sign a term sheet, subject to

court approval of more formal settlement documents. A term sheet is an enforceable

settlement agreement under not only Oregon substantive law, but is also a recognized

practice in Federal Courts. See e.g., *In re: Syncor ERISA Litig.*, 516 F.3d at 1100 - 01.

   But Defendant is unwilling to acknowledge this or that Rule 23 is procedural

mechanism. To support its argument that there is no agreement, Defendant now lodges

"objections" to the terms in the signed Term Sheet. Defendant's new counsel confirmed

those objections to the class procedural matters in the July 15 hearing. Defendant's

President also objects to attorneys' fees and "an approach to class administration that

places plaintiff's law firm in direct communication with our company's employees." ECF

26 (Def. *Murphy Decl.*, ¶¶ 4 - 6). Even if these were valid objections (there is no

prohibition under FRCP 23 to prevent class counsel from communicating with class

members who are current employees), the issues revolve around subordinate terms which

---

[5] The 2003 Advisory Committee Notes to the FRCP 23 further explained the filing of "any agreement" provision: "Paragraph (2). Subdivision (e)(2) requires parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) to file a statement identifying any agreement made in connection with the settlement. This provision does not change the basic requirement that the parties disclose all terms of the settlement or compromise that the court must approve under Rule 23(e)(1)."

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

the Court can fairly determine in the initial settlement hearing.[6] The same applies for the other terms in the proposed, formal settlement document which the parties' counsel discussed in various e-mail communications.

## D. Principal-Agent Law

During the June 13 settlement conference, Defendant's counsel Triplett had actual, implied, or apparent authority to bind Murphy to a settlement by signing the Term Sheet agreement. Though Murphy Company's apparent decision-maker John Murphy had left early, he remained available by phone, and gave no indication to Plaintiff that Murphy's counsel and Murphy manager Scott Prowell could not continue negotiating on the Company's behalf. Defendant is therefore estopped from disavowing the parties' agreement. "If an agent is authorized to perform a certain act on behalf of his principal, the principal cannot escape liability that arises from that act because the principal does not like the consequences." *Hiransomboon*, 46 Or. App. 493, 499.

Federal courts look to state law regarding the principal-agent relationship. See, *Ionian Corp. v. Country Mut. Ins. Co.*, 744 F. Supp. 2d 1104, 1109 (D. Or. 2010) (applying Oregon common law to determine an agent's authority to bind principal). Under Oregon law, "The client-attorney relationship is one of principal and agent." *Johnson v. Tesky*, 57 Or. App. 133, 137 (1982). "[T]he 'acts' of a corporation constitute the acts of its agents performed within the scope of their work for the corporation," *Doe v. Or. Conf.*

---

[6] "In common fund cases, fees are 'based on the equitable notion that those who have benefitted from litigation should share in its costs.' That means that the people who benefit from the money the lawyers' efforts brought in should share the burden of paying the lawyers." *In re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d 602, 607 (9th Cir. 1997) (internal cite omitted). A "'* * *district court has broad authority over awards of attorneys' fees' in class actions," and such awards are reviewed only for abuse of discretion. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The District Court may determine the award either by percentage or lodestar method. *In re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d at 607.

Page 12 -    **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

*of Seventh-Day Adventists*, 199 Or. App. 319, 326 (2005), and "it is well settled that the conduct of an attorney who acts within the scope of his or her authority will be imputed to the client." *MacDonald v. Cottle*, 133 Or. App. 35, 40 (1995). Even the U.S. Supreme Court as early as 1880 noted that "The facts brought to the knowledge of their attorney in his inquiries respecting the * * * [issue] are considered in law as brought to their knowledge", and "The law * * * considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. 320, 325-26 (1880).

An agent may bind its principal with actual, apparent, or implied authority. "Actual authority to act for another may be either express or implied. Express authority * * * * is that authority which the principal confers upon the agent in express terms. The express authority given to an agent to do a certain thing carries with it the implied authority to do such other things as are reasonably necessary for carrying out the given task." *Wiggins v. Barrett & Associates, Inc.*, 295 Or. 679, 686-87 (1983).

"Apparent authority to do an act (settle) is created when *the principal's conduct*, reasonably interpreted, causes a third person mistakenly to believe that the agent has actual authority." *Tesky*, 57 Or. App. at 137 (1982) (italics original) (cites omitted). "The practical difference between actual and apparent settlement authority is that, while in both instances the client is bound, in the latter case he may seek a remedy against his attorney for breach of contract." *Id.*, 57 Or App at 137 (cite omitted).

Also with respect to apparent authority, the Oregon Supreme Court has stated:

> Apparent authority is to be distinguished from implied authority. Implied authority is such as the principal actually intends his agent to have, although that intention is to be discerned only from the nature of the task or from the acts and conduct of the principal from which the grant of power may be inferred even though not expressed. **If implied authority exists** there is no need to consider whether the principal has held out the agent as having certain authority. **The principal will be bound** to a third

Page 13 -    **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

person by the act of the agent within his implied authority even if the third person was unaware at the time of the act that the agent's authority was only implied.

On the other hand, a principal may be held bound to a third person for an act of the agent completely outside the agent's implied (or express) authority if the principal has clothed the agent with apparent authority to act for the principal in that particular. In other words, the principal permits the agent to appear to have the authority to bind the principal. We have stated the elements necessary to establish apparent authority in Jones v. Nunley, 274 Or 591, 595, 547 P2d 616 (1976):

> "Apparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter. The third party must also rely on that belief."

*Wiggins*, 295 Or. 679, 687-88 (emphases added). Accord, *Badger v. Paulson Inv. Co.*, 311 Or. 14, 24-25 (1991) (either implied or apparent authority "can bind the principal, creating liability for the acts of the agent."); and *Hiransomboon v*, 46 Or. App. 493, 498 ("when an agent makes or revokes a contract with a third person in violation of conditional authority, the agent's principal is nevertheless liable to the third person unless the third person knew or should have known that the agent was exceeding his conditional authority.").

The Oregon Supreme Court has confirmed these principles on apparent authority as recently as 2008. In *Taylor v. Ramsay-Gerding Constr. Co.*, the Oregon Supreme Court stated that "a principal also may be bound by actions taken that are 'completely outside' of the agent's actual authority, if the principal allows the agent to appear to have the authority to bind the principal. Such a circumstance is called 'apparent authority.'" 345 Or. 403, 409-10 (2008) (citing *Wiggins*, 295 Or. at 687).

One particular Oregon Court of Appeals case exemplifies Oregon's application of principal-agent law in the client-attorney context, with facts strikingly similar to those in

Page 14 -   **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

this case. In *Kaiser Foundation Health Plan v. Doe*, an employer sued a former employee to enforce an oral settlement agreement arising from a mediation between the employer and employee. During a formal mediation, the defendant authorized her attorney to accept a proposed agreement, and then left for dinner. Defendant's attorney "returned to the mediation site where all the attorneys signed a document [entitled "Essential Terms of the Agreement] to confirm the terms they had agreed constituted the offer." 136 Or. App. 566, 568-69 (1995). The defendant's attorney then

> * * * told plaintiff's attorneys that he would contact them within a few hours with either defendant's acceptance or rejection of the proposed agreement. The attorneys agreed that if defendant accepted the terms, * * * one of plaintiff's attorneys, would draft a formal settlement agreement for all the parties to sign.
>
> Later that evening, [defendant's attorney] contacted [plaintiff's attorney] to clarify the breadth of the confidentiality provision in the agreement. * * * * [Defendant's attorney] called [plaintiff's attorney] a second time to make certain that the money received in the settlement would be characterized by plaintiff for tax purposes as compensation for pain and suffering. After receiving a satisfactory answer from [plaintiff's attorney], [defendant's attorney] told [plaintiff's attorney] that defendant had accepted the terms. He then notified the mediator that they had "settled the case." He also notified defendant either before or after his second call to [plaintiff's attorney] that he was about to accept, or had just accepted, the settlement terms on defendant's behalf.
>
> Two days later, defendant notified [her attorney] that she declined to settle her claims. On August 26, she sent a letter to [her attorney] which stated:
>
> > "As of August 20, 1993, I rescinded on a verbal agreement with [plaintiff] which I made under extreme duress."
>
> Meanwhile, on August 25, [plaintiff's attorney] had delivered to [defendant's attorney] a draft of a proposed written settlement. [Defendant's attorney] notified [plaintiff's attorney] on August 30 that defendant did "not wish to enter into a settlement agreement along the lines we discussed at the mediation session on August 18."

*Kaiser*, 136 Or. App. at 569-70. The employer then sued to enforce the oral agreement.

Page 15 - **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

The *Kaiser* Court first rejected the defendant-employee's argument that the agreement was required to be in writing. The Court then found that the "evidence indicates that the parties intended that the settlement become binding," because the defendant had authorized her attorney to accept the offer, and that attorney later notified the mediator that the case had settled. *Id.* at 572.

The *Kaiser* Court further rejected the defendant's argument that she did not give her attorney "authority to enter into a final settlement with plaintiff on August 18, **and that she was not even aware of some of the terms listed in the agreement.**" *Id.*, 136 Or. App. at 572 (bold added). The *Kaiser* Court found that the attorney did have actual and apparent authority to bind his client: actual authority to accept the offer to settle, and apparent authority to bind defendant to settlement terms of which she was unaware. *Id.* at 573. In making those findings the Court noted:

> * * * the record shows * * * defendant permitted [defendant's attorney] to do all the negotiating regarding the case on her behalf, and in turn, he kept her apprised of his negotiations and made counteroffers on her behalf. **The offer itself was conveyed to defendant through [defendant's attorney], and defendant's and [her attorney's] conduct indicated that an acceptance or rejection would be conveyed to plaintiff through [defendant's attorney],** which in fact happened. When [defendant's attorney] accepted the settlement, **plaintiff had no reason to believe that he was not authorized to accept all of the terms. In sum, defendant's conduct was reasonably interpreted by plaintiff as having given [defendant's attorney] authorization to accept the entire offer.**

*Kaiser*, 136 Or. App. at 573 (emphases added).

And while defendant had argued "that the parties never reached a meeting of the minds on some of the essential terms," the Court of Appeals rejected it in part because, "at the very least, [defendant's attorney] had apparent authority to settle defendant's claim on her behalf, and [that attorney] accepted the arbitration provision as part of the settlement. 'It is well settled that the conduct of an attorney who acts within the scope of

Page 16 -   **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

his or her authority will be imputed to the client.'" *Kaiser*, 136 Or. App. at 574 (internal cited omitted). The Court further rejected the defendant's "no meeting of the minds" argument because the defendant's attorney understood the agreed-upon terms that had not been disclosed to his client, and those terms were sufficient and definite. *Id.* at 574-76.

At the settlement conference, Defendant's counsel Triplett had actual and apparent authority to bind Defendant to settle the case, including the provisions in the Term Sheet. First, during that conference, counsel continued negotiating on behalf of Defendant after Defendant's President had left but apparently remained available by phone.[7] Both Murphy Company and its former counsel admit that in a phone call during the conference, Defendant's President authorized Mr. Triplett to accept the $450,000 offer. This was express authority, which Defendant's counsel exercised. And in exercising such authority, he bound Murphy Company. It follows that Mr. Triplett's implied authority to sign the Term Sheet naturally flowed from the express authority to settle the case for $450,000. Counsel's signing of the Term Sheet on behalf of Murphy Company has bound Murphy to it.

It is also clear that during the settlement conference, Defendant allowed its counsel to appear to have the authority to bind Defendant. Counsel had the apparent authority to settle the case for Defendant and sign the Term Sheet. Mr. Murphy now strenuously complains that the Company's attorney did not disclose all of the matters set forth in the signed Term Sheet. ECF No. 26 (Def. *Murphy Decl.*, ¶ 3 - 5). That at least partly Mr. Murphy's fault, having left the settlement conference early. In doing so, he left Mr. Triplett and another Murphy agent to continue negotiating, and remained available by phone. Judge Coffin as the settlement judge continued thereafter to communicate the

---

[7] Mr. Murphy's early exit – not yet adequately explained – is now serving as a basis for Defendant to try and disavow any settlement was reached.

Page 17 -    **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

parties' offers and positions to each other. Obviously Judge Coffin believed as well that he was interacting with persons with authority to settle the case.

To Plaintiff, Defendant's continued negotiations after Mr. Murphy left, Mr. Murphy being available by phone, Defendant's acceptance of the $450,000 offer, and Defendant counsel's demand that an additional term be included in the Term Sheet, are all acts which Plaintiff reasonably interpreted to believe that Defendant had consented to have Mr. Triplett act on its behalf. Plaintiff relied upon that belief.

Further, there was no reason for Plaintiff to have reasonably concluded that Mr. Triplett could not agree to the $450,000 and sign the Term Sheet. The parties were in different rooms during the settlement conference; Plaintiff was not privy to any attorney-client privileged conversations between Mr. Murphy and Mr. Triplett. There was also no communication or other conduct by Defendant to Plaintiff to suggest that Mr. Triplett did not have actual or apparent authority to bind Defendant.

Just as in the *Kaiser* case, Plaintiff and Defendant have a binding agreement to settle. That Mr. Murphy authorized Mr. Triplett to settle the case, but did not know about the Term Sheet, is an issue between Defendant Murphy Company and its former counsel Mr. Triplett.

### E. Defendant's Sanctionable Conduct

The Court has the authority to sanction Defendant Murphy Company, and its attorneys, or both, for their conduct giving rise to this current predicament. A District Court has the inherent authority "to award damages for failure to comply with [a] settlement agreement". *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).

When a party or its attorney fails to obey a pre-trial order issued under F.R.C.P. 16, then "[o]n motion or on its own, the court may issue any just orders, including those

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331

authorized by Rule 37(b)(2)(A)(ii)-(vii)," upon the party or attorney. F.R.C.P. 16(f)(1).

Civil Rule 37(b)(2)(A) permits that a court may issue an order:

>    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
>    (iii) striking pleadings in whole or in part;
>
>    (iv) staying further proceedings until the order is obeyed;
>
>    (v) dismissing the action or proceeding in whole or in part;
>
>    (vi) rendering a default judgment against the disobedient party; or
>
>    (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 16 provides that "[i]nstead of or in addition to any other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." F.R.C.P. 16(f)(2). Judge Coffin's order for the June 13 settlement conference similarly warned that sanctions could result for a party's failure to comply with his order. ECF No. 15 (bold original). "Substantial justification means to a degree that would satisfy a reasonable person." *Biovail Corp. v. Mylan Labs., Inc.*, 217 F.R.D. 380, 382 (N.D. W.V. 2003).

Defendant represented to both Plaintiff's counsel on March 22 and then to the Court on March 28 that Defendant was willing and able to mediate the class claims in this lawsuit. Therefore, at the express request of Defendant, the Court ordered the parties to a settlement conference. The parties were required to appear with persons having authority to settle the case. Even after Murphy's President left the settlement conference early for some other undisclosed meeting, Murphy's counsel continued to negotiate with Plaintiff

Page 19 -  PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE

to settle the case, and Mr. Murphy was apparently available by phone. The parties reported to the Court that the case settled, signed the Term Sheet (as required by LR 16), and an order issued.

The Court should therefore hold Defendant in contempt of Court for refusing to obey Judge Coffin's order that the parties submit the settlement documents to this Court for approval. The Court should further order that Defendant comply with Judge Coffin's Order by working with Plaintiff's counsel to submit the final settlement documents.

Finally, F.R.C.P. 16(f) requires the imposition of sanctions upon Defendant in the form of an award of reasonable expenses, including attorneys' fees, payable to Plaintiff, incurred as a result of Defendant getting cold feet. Such conduct is not substantially justified, and there is no other reason why that sanction would be unjust under these circumstances.

## IV.  CONCLUSION

The parties agreed to settle this case, subject to Court approval under FRCP 23. Judge Coffin's June 16 Minute Order reflected this. The Court should therefore enforce the parties' settlement agreement and Judge Coffin's Order that the parties submit the proposed class settlement for this Court's approval. The Court should also award Plaintiff reasonable expenses, including attorneys' fees, incurred as a result of Defendant's failure to do what it has already expressly agreed to do.

Dated August 12, 2011.

       /s/ Chey K. Powelson
A. E. Bud Bailey, OSB No. 871577
BBailey@wagelawyer.com
J. Dana Pinney, OSB No. 753088
JDPinney@wagelawyer.com
Chey K. Powelson, OSB No. 035512
CPowelson@wagelawyer.com
Phone: (360) 567 - 2551
Bailey, Pinney & Associates, LLC
Of Attorneys for Plaintiff

Page 20 -   **PLAINTIFF'S MEMORANDUM: (1) SUPPORTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND (2) WITH THE FACTUAL AND LEGAL BASES RELATING TO THE FORMATION & BINDING EFFECT OF THE PARTIES' AGREEMENT TO SETTLE THIS CASE**

## CERTIFICATE OF SERVICE

*Arthur, et al. v. Murphy Co.*

Case No. 10-CV-03142-CL

I hereby certify that I caused to be served the foregoing *Plaintiff's Memorandum:*
*(1) Supporting Plaintiff's Motion to Enforce Settlement Agreement; and (2) with the*
*Factual and Legal Bases Relating to the Formation & Binding Effect of the Parties'*
*Agreement to Settle this Case* upon:

> Michael Haglund
> Haglund Kelley Horngren Jones & Wilder LLP
> 200 SW Market St. # 1777
> Portland, OR 97201
> Fax: 503-225-1257
> Attorney for Defendant

by the following indicated method(s):

> [X]  by electronic mailing through the CM/ECF system, in accordance with Fed.
>
> R. Civ. P. 5(d), on August 12, 2011.

DATED:  August 12, 2011.

> /s/ Chey K. Powelson
> Chey K. Powelson, OSB No. 035512
> CPowelson@wagelawyer.com
> Phone: (360) 567 - 2551
> Bailey, Pinney & Associates, LLC
> Of Attorneys for Plaintiff

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
12204 SE Mill Plain Blvd, Suite 100 • Vancouver, Washington 98684
(360) 567-2551 • Fax (360) 567-3331